UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 11-20684-CR-SEITZ
MAGISTRATE JUDGE
SIMONTON

18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 982

FILED by _____ D.C.
SEP 29 2011
STEVEN M. LARIMORE
CLERK U.S. DIST. CT
S. D. of FLA. – MIAMI

UNITED STATES OF AMERICA

vs.

LAZARO PRAT,
LISSETTE LOPEZ PRAT, and
EUDALDO ESTABAN TORRES,

   Defendants.
_____/

# INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Indictment:

### The Medicare Program

1.  The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were prescribed by statute and by federal regulations under the auspices of the United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"). Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.  Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.  Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items, and services, including durable medical equipment ("DME"), that were medically necessary and ordered by licensed medical doctors or other qualified health care providers. DME is equipment that is designed for repeated use and for a medical purpose, such as prosthetic limbs, back braces, knee braces, and wheelchairs.

4.  For Florida beneficiaries, Medicare Part B's insurance concerning DME and related health care benefits, items, and services, was administered by Palmetto Government Benefits Administrators ("Palmetto GBA"), pursuant to a contract with HHS. Among Palmetto GBA's responsibilities, it received, adjudicated, and paid the claims of authorized DME suppliers that were seeking reimbursement for the cost of DME and other health care benefits, items, or services supplied or provided to Medicare beneficiaries.

## Medicare Billing Procedures

5.  A DME company that sought to participate in Medicare Part B and bill Medicare for the cost of DME and related benefits, items, and services was required to apply for and receive a "supplier number." The supplier number allowed a DME company to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of DME and related health care benefits, items, and services that a DME company had supplied to beneficiaries.

6.  To receive payment from Medicare, a DME company, using its supplier number, would submit a health insurance claim form, known as a CMS-1500. Medicare permitted DME companies to submit a CMS-1500 electronically or by way of a paper claim form. The CMS-1500 required DME companies to provide certain important information, including: (a) the Medicare

beneficiary's name and identification number; (b) the identification number of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided or supplied to the beneficiary.

7. Medicare, through Palmetto GBA, generally would pay a substantial portion of the cost of the DME or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.

8. Payments under Medicare Part B were often made directly to the DME company rather than to the patient/beneficiary. For this to occur, the beneficiary would assign the right of payment to the DME company or other health care provider. Once such an assignment took place, the DME company would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

9. Under Medicare rules and regulations, DME or other related health care benefits, items or other services, must be medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider in order to be reimbursed by Medicare.

### The Corporations

10. Advance Medical Equipment, Inc. ("Advance Medical"), a Florida corporation, located at 7220 Northwest 36th Street, Suite 308B, Miami, Florida 33166, was purportedly engaged in the business of providing DME to Medicare beneficiaries. Advance Medical had a Medicare supplier number and was eligible to receive reimbursement from Medicare for durable medical equipment rendered to beneficiaries.

11. Medline Pharmacy Corp. ("Medline Pharmacy"), a Florida corporation, located at 7299 West Flagler Street, Miami, Florida 33144, was purportedly engaged in the business of providing DME to Medicare beneficiaries. Medline Pharmacy had a Medicare supplier number and was eligible to receive reimbursement from Medicare for durable medical equipment rendered to beneficiaries.

12. Advanced Pharmacy, Inc. ("Advanced Pharmacy"), a Florida corporation, located at 251 Park Boulevard, Miami, Florida 33126, was purportedly engaged in the business of providing DME to Medicare beneficiaries. Advanced Pharmacy had a Medicare supplier number and was eligible to receive reimbursement from Medicare for durable medical equipment rendered to beneficiaries.

13. Pharmacy Services, Inc. ("Pharmacy Services") was a Florida corporation located at 1442 Southwest 93rd Place, Miami, Florida 33174.

14. Fishing Charters of Miami, Inc. ("Fishing Charters") was a Florida corporation located at 1442 Southwest 93rd Place, Miami, Florida 33174.

### The Defendants

15. Defendant **LAZARO PRAT** was a resident of Miami-Dade County. From on or about June 3, 2003, through on or about July 8, 2004, **LAZARO PRAT** was president of Advance Medical. From on or about July 8, 2004, through on or about July 28, 2004, **LAZARO PRAT** was treasurer of Advance Medical. From on or about July 24, 2004, through on or about January 26, 2005, **LAZARO PRAT** was vice president of Advance Medical. From on or about June 29, 2005, through on or about July 28, 2008, **LAZARO PRAT** was president and director of Pharmacy Services. From on or about April 10, 2006, through on or about July 28, 2008, **LAZARO PRAT**

was president and director of Fishing Charters.

16.  Individual 1 was a resident of Miami-Dade County. From on or about July 28, 2004, through on or about January 26, 2005, Individual 1 was president, vice-president, secretary, and treasurer of Advance Medical.

17.  Defendant **LISSETTE LOPEZ PRAT** was a resident of Miami-Dade County. From on or about August 2, 2004, through on or about July 29, 2008, **LISSETTE LOPEZ PRAT** was director, president, vice-president, secretary, and treasurer of Medline Pharmacy. **LISSETTE LOPEZ PRATT** was the wife of **LAZARO PRAT**.

18.  Defendant **EUDALDO ESTABAN TORRES** was a resident of Miami-Dade County. From on or about January 18, 2006, through on or about February 19, 2008, **TORRES** was president and registered agent of Advanced Pharmacy.

### COUNTS 1–5
### Health Care Fraud
### (18 U.S.C. § 1347)

1.  Paragraphs 1 through 18 of the General Allegations section of this Indictment are realleged and incorporated by reference as if fully set forth herein.

2.  From on or about July 16, 2002, through on or about July 29, 2008, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**LAZARO PRAT,**
**LISSETTE LOPEZ PRAT,**
**and**
**EUDALDO ESTABAN TORRES,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare,

a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, Medicare, that is, the defendants, through Advance Medical, Medline Pharmacy, and Advanced Pharmacy, submitted and caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of various DME items and services.

### Purpose of the Scheme and Artifice

3. It was the purpose of the scheme and artifice for the defendants to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare; (b) concealing the receipt of the fraud proceeds; and (c) diverting the fraud proceeds for the personal use and benefit of themselves and others.

### The Scheme and Artifice

The scheme and artifice by which the defendants sought to accomplish the purpose of their scheme included, among others, the following:

4. On or about July 16, 2002, **LAZARO PRAT** opened a corporate bank account at Bank of America, ending in 4354, on behalf of Advance Medical. **LAZARO PRAT** was the sole signatory on the account. On or about August 4, 2004, Individual 1 took control of and acted as sole signatory for the Advance Medical corporate account at Washington Mutual ending in 4354.

5. On or about June 3, 2003, paperwork was submitted to the Florida Department of Corporations making **LAZARO PRAT** president of Advance Medical. On or about July 8, 2004, **LAZARO PRAT** was made treasurer of Advance Medical, and later, on or about July

6

24, 2004, **LAZARO PRAT** was made vice president of the company. Also on July 24, 2004, Individual 1 became president of Advance Medical.

6. On or about September 24, 2003, November 17, 2003, and January 28, 2004, **LAZARO PRAT** submitted applications to Medicare on behalf of Advance Medical in order to obtain a supplier number, and to name himself as Advance Medical's president. On or about July 28, 2004, Individual 1 submitted an application to Medicare naming himself as Advance Medical's president.

7. On or about July 30, 2004, **LAZARO PRAT**, on behalf of Advance Medical, submitted an application to have all the money Medicare paid to Advance Medical deposited into the company's Washington Mutual account ending in 4354.

8. From on or about April 22, 2004, through on or about January 26, 2005, **LAZARO PRAT** and Individual 1, on behalf of Advance Medical, submitted and caused the submission of $3,918,136 in false and fraudulent Medicare claims and obtained $559,980 of reimbursement from Medicare for DME which was neither ordered by a physician nor provided to the beneficiary as claimed.

9. During that same period, **LAZARO PRAT** received $17,400 worth of cash and checks drawn on Advance Medical's Washington Mutual account ending in 4354. **LISSETTE LOPEZ PRAT** received $5,780 worth of checks drawn on Advance Medical's Washington Mutual account ending in 4354.

10. On or about July 7, 2004, **LISSETTE LOPEZ PRAT** signed a lease as Medline Pharmacy's president for the company to be located at 1442 Southwest 93rd Place, Miami, Florida 33174.

11. On or about August 2, 2004, paperwork was submitted to the Florida Department of Corporations incorporating Medline Pharmacy and making **LISSETTE LOPEZ PRAT** director, president, vice-president, secretary, and treasurer of the company.

12. On or about November 5, 2004, **LISSETTE LOPEZ PRAT** submitted an application to Medicare on behalf of Medline Pharmacy in order to obtain a supplier number, and to name herself as Medline Pharmacy's president.

13. On or about March 11, 2005, **LISSETTE LOPEZ PRAT**, on behalf of Medline Pharmacy, submitted an application to Medicare to have all Medicare payments to the company deposited into the company's corporate account at Bank of America ending in 7814.

14. From on or about February 8, 2005, through on or about July 29, 2008, **LAZARO PRAT** and **LISSETTE LOPEZ PRAT**, on behalf of Medline Pharmacy, submitted and caused the submission of $16,684,461 in false and fraudulent Medicare claims and obtained $10,638,800 of reimbursement from Medicare for DME which was neither ordered by a physician nor provided to the beneficiary as claimed.

15. **LAZARO PRAT** and **LISSETTE LOPEZ PRAT** used the proceeds of the health care fraud for their personal benefit and to further the fraud. **LAZARO PRAT** received approximately $289,000 worth of checks drawn on Medline Pharmacy's Bank of America account ending in 7814, and **LISSETTE LOPEZ PRAT** received approximately $1 million worth of checks from the same account. **LAZARO PRAT**'s two companies, Pharmacy Services and Fishing Charters, furthermore received approximately $1.6 million and $441,000 worth of checks drawn on Medline Pharmacy's Bank of America account ending in 7814, respectively.

16. On or about January 18, 2006, paperwork was submitted to the Florida

8

Department of Corporations incorporating Advanced Pharmacy and naming **EUDALDO ESTABAN TORRES** president and registered agent of the company.

17. On or about January 28, 2006, **EUDALDO ESTABAN TORRES** opened a corporate account for Advanced Pharmacy at Bank of America ending in 1217. **TORRES** signed as the company's president and secretary and **LAZARO PRAT** signed as an authorized signor.

18. On or about February 28, 2006, **EUDALDO ESTABAN TORRES** submitted an application to Medicare on behalf of Advanced Pharmacy in order to obtain a supplier number, and to name himself as Advanced Pharmacy's director.

19. On or about March 1, 2006, **EUDALDO ESTABAN TORRES** signed a lease as Advanced Pharmacy's president for the company to be located at 251 Park Boulevard, Miami, Florida 33126.

20. On or about November 7, 2007, **EUDALDO ESTABAN TORRES**, on behalf of Advanced Pharmacy, submitted an application to Medicare to have all Medicare payments to the company deposited into the company's corporate account at Bank of America ending in 1217.

21. From on or about June 13, 2006, through on or about February 19, 2008, **LAZARO PRAT** and **EUDALDO ESTABAN TORRES**, on behalf of Advanced Pharmacy, submitted and caused the submission of $6,217,623 in false and fraudulent Medicare claims and obtained $4,202,719 of reimbursement from Medicare for DME which was neither ordered by a physician nor provided to the beneficiary as claimed.

22. During that same period, **LAZARO PRAT** received approximately $18,600 worth

of checks drawn on Advance Pharmacy's Bank of America account ending in 1217. **LAZARO PRAT's** two companies, Pharmacy Services and Fishing Charters, received approximately $946,000 and $186,000 worth of checks drawn on Advance Pharmacy's Bank of America account ending in 1217, respectively.

### Acts in Execution or Attempted Execution of the Scheme and Artifice

23. On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, **LAZARO PRAT, LISSETTE LOPEZ PRAT**, and **EUDALDO ESTABAN TORRES**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that, the defendants submitted and caused the submission of false and fraudulent Medicare claims, representing that Advance Medical, Medline Pharmacy, and Advanced Pharmacy provided the identified DME to Medicare beneficiaries pursuant to physicians' orders and prescriptions:

| Count | Defendants | Medicare Claim Number | Approx. Date of Claim | DME Company | Product Code; Item Claimed; Approximate Amount Claimed |
|---|---|---|---|---|---|
| 1 | LAZARO PRAT and LISSETTE LOPEZ PRAT | 10635275922600 | 12/16/2006 | Medline Pharmacy | E1390; Oxygen Concentrator; $300 |

| Count | Defendants | Medicare Claim Number | Approx. Date of Claim | DME Company | Product Code; Item Claimed; Approximate Amount Claimed |
|---|---|---|---|---|---|
| 2 | LAZARO PRAT and LISSETTE LOPEZ PRAT | 10710074723100 | 4/7/2007 | Medline Pharmacy | J7614; Levalbuterol; $625 |
| 3 | LAZARO PRAT and LISSETTE LOPEZ PRAT | 10810970172600 | 3/18/2008 | Medline Pharmacy | J7605; Arformoterol; $566 |
| 4 | LAZARO PRAT and EUDALDO ESTABAN TORRES | 1062857094030 | 10/4/2006 | Advanced Pharmacy | J7614; Levalbuterol; $570 |
| 5 | LAZARO PRAT and EUDALDO ESTABAN TORRES | 1070797505700 | 3/16/2007 | Advanced Pharmacy | J7614; Levalbuterol; $625 |

In violation of Title 18, United States Code, Sections 1347 and 2.

### FORFEITURE ALLEGATIONS
(18 U.S.C. § 982)

1.  The allegations contained in this Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **LAZARO PRAT, LISSETTE LOPEZ PRAT,** and **EUDALDO ESTABAN TORRES,** have an interest.

2.  Upon conviction of a violation of Title 18, United States Code, Sections 1347,

11

as alleged in this Indictment, the defendant so convicted shall forfeit to the United States all of his or her right, title and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

3. The property which is subject to forfeiture includes, but is not limited to, the following: a sum of money equal in value to any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the violations alleged in this Indictment, which the United States will seek as a forfeiture money judgment against each defendant jointly and severally as part of their respective sentence.

All pursuant to Title 18, United States Code, Section 982(a)(7), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____, Chief Criminal Div.
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
ROBERT J. LUCK
ASSISTANT UNITED STATES ATTORNEY

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO. _____ |
| vs. | |
| LAZARO PRAT, LISSETTE LOPEZ PRAT, and EUDALDO ESTABAN TORRES, | **CERTIFICATE OF TRIAL ATTORNEY\*** |
| Defendants. _____/ | Superseding Case Information: |

**Court Division:** (Select One)

   X   Miami   ____ Key West
   ____   FTL   ____ WPB   ____ FTP

New Defendant(s)   Yes ____ No ____
Number of New Defendants   ____
Total number of counts   ____

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No)    Yes
   List language and/or dialect    Spanish

4. This case will take    10    days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   - I   0 to 5 days   ____
   - II   6 to 10 days   X
   - III   11 to 20 days   ____
   - IV   21 to 60 days   ____
   - V   61 days and over   ____

   (Check only one)
   - Petty   ____
   - Minor   ____
   - Misdem.   ____
   - Felony   X

6. Has this case been previously filed in this District Court? (Yes or No)    No
   If yes:
   Judge: _____ Case No. _____
   (Attach copy of dispositive order)
   Has a complaint been filed in this matter? (Yes or No)    No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____ District of _____

   Is this a potential death penalty case? (Yes or No)    No

7. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003? ____ Yes    X    No

8. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007? ____ Yes    X    No

_____
Robert J. Luck
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 0028065

\*Penalty Sheet(s) attached

REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** LAZARO PRAT

**Case No:** _____

Counts #: 1–5

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:** 10 years' imprisonment as to each count

\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** LISSETTE LOPEZ PRAT

**Case No:** _____

Counts #: 1–3

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:** 10 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name:** EUDALDO ESTABAN TORRES

**Case No:** _____

Counts #: 4–5

Health Care Fraud

Title 18, United States Code, Section 1347

**\*Max. Penalty:**    10 years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**