UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**  *
      **Plaintiff,**

                            *   **Case No: 11-20684-CR-PAS**

**v.**

                          *

**LAZARO PRAT**
      **Defendant.**     *
_____/

## MOTION TO DISMISS PORTIONS OF INDICTMENT AS IMPROPER SURPLUSAGE

**COMES NOW,** the defendant **LAZARO PRAT t**hru is undersigned counsel and respectfully file this his motion to dismiss portions of indictment as improper surplusage and as violative of the Statute of Limitations and states therein.

1.    Mr. Prat was charged with having committed health care fraud in a pharmacy called Advanced Pharmacy Inc. This defendant has until March 15, 2012 to file defense motions in the instant case. (D.E. #43)

2.    At the very inception of this case on **January 5, 2012** Mr. Prat advised the government that he was guilty and wanted to accept responsibility for his actions and wanted to plead guilty, however, **that the indictment was in error** in imputing him with $3.9 million billed by a DME called Advance Medical Equipment Inc.,(Advance) indicating that he never billed Medicare for any $3.9 million nor ever received $560,000 from Medicare as stated in the indictment.

3.    On **January 5, 2012** the government was advised that this issue could be resolved

1

amongst the parties without any need to file motions or pleadings.

4.  The government was advised that by looking at the indictment these claims must have been filed **after Mr. Prat sold Advance to an Alain Hernandez on or about July 28, 2004** and if Mr. Prat was being held responsible for the times he was previously involved with Advance must be because the new owner started billing Medicare retroactively as permitted by Medicare regulations.

5.  The government was also advised that **these claims were barred from prosecution as violative of 18 USC §3282, Statute of Limitations** and that if we could resolve this matter we could then proceed to a change of plea without any further need for motions or hearings.

6.  This defendant did not hear back from the government pertaining to this request except to state that it would think about it and that the government was still awaiting our answer as to relinquishing our attorney's fees.

7   On **January 17, 2012** this defendant filed its Second Response to the Standing Discovery Order and **provided the government with the documents and corporate records of Advance reflecting pertinent dates and transactions affecting the charges contained in the indictment as to Advance and demonstrating that Mr. Prat first came into this business in June 2003, and that his business had been sold to a certain Alain Hernandez on or about July 28, 2004.**

8.  This defendant did not hear back from the government pertaining to this request after it had this corporate information.

9. On **January 17, 2012** the government filed its first response to the Standing Discover Order.

10. The next day on **January 18, 2012** Pursuant to the Standard Discovery Order of December 30, 2011 the government was advised that we were now ready to meet with the government for purposes of a discovery conference and that pursuant to Paragraph C of the Order the defense was requesting information and materials which may be favorable on the issues of guilt or punishment within the scope of Brady v. Maryland, 373 U.S. 83 (1963) and United States v. Agurs, 427 U.S. 97 (1976).

11. At that time the defense requested discovery information or material **only** as to Advance advising the government that it could make a CD of the information for which the defendant would pay for and print himself.

12. On **January 27, 2012** the government was advised again that the defense did not want to take up the court's valuable time on an issue that could be resolved amongst the parties.

13. On **January 27, 2012** the government was asked to please advise the defense in writing if it was willing to voluntarily exclude from the indictment the amounts imputed to Mr. Prat from the operation of Advance so we could then proceed to a plea resolution of this case.

14. On **January 27, 2012** the government was also asked to please advise if it was not willing to voluntarily exclude from the indictment the amounts imputed to Mr. Prat from the operation of Advance then to please advise the defense in writing if it would be willing to voluntarily produce the material requested on January 18, 2012 **pertaining only to Advance Medical Equipment Inc.**

15.  The government then proposed a discovery conference for Monday **February 6, 2012,** which counsel Emanuel Perez, Esq., could not make because he was scheduled for jury trial and the conference was rescheduled.

16.  On **February 2, 2012** the defense received two (2) CD's from the government as additional discovery and sent them top the printer.  On **Monday February 6, 2012,** five (5) boxes full of documents were received by undersigned counsel from the printers.

17.  On or about **March 5, 2012** the printer provided counsel with copies of the latest discovery provided by the government.

18.  On **March 9, 2012**  again Mr. Prat asked the government if it would voluntarily exclude from the indictment the improper charges.  The government responded that these allegations had "a basis" requesting a copy of the motion before being filed.

19.  On March 14, 2012 a copy of the motion was provided to the government.

20.  After analyzing the government's own discovery this motion is being filed.

21.  The six (6) substantive counts in this indictment begin with the date 12/16/2006 and end with date 4/7/2007 **several years after Mr. Prat had sold Advance.**

22.  Mr. Prat is not waiving his affirmative defense of a violation of the Statute of Limitations as contained in 18 USC §3282..

**Statute of Limitations**

23.  The government asserts that the claims filed by Advance from 2003 and 2004 while Mr. Prat was the owner of Advance **(about 7 or 8 years before the filing of the indictment)** were fraudulent.  Also that the subsequent claims filed by the new owner until January 2005,

**(about 6 or 7 years before the filing of the indictment )** were fraudulent.

24.     Had the government notified Mr. Prat or charged Mr. Prat **back in 2003 or 2004** it would have allowed Mr. Prat to defend himself from these allegations with evidence that was available to him back then.

25.     With the passage of all these years Mr. Prat does not have available to him patient charts; copies of prescriptions; invoices; names of treating physicians; medical condition of patients; names and addresses of patients; copies of buy/sell contracts; copies of correspondence from the attorneys that did the buy/sell agreements; copies of correspondence from Medicare addressed to him at that time; etc.. and any and all other supporting documentation that would have allowed him to properly and timely defend himself.

**Memorandum**

The Constitution's speedy trial clause, **U.S. Const. Amend. VI**, protects the criminally accused against unreasonable delays between his indictment and trial. Before indictment, the statutes of limitation, and in extreme circumstances the due process clauses.

The phrase "statute of limitations" refers to the time period within which formal criminal charges must be brought after a crime has been committed. The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.

Such a limitation is designed to protect individuals from having to defend themselves against charges when the basic facts may have become obscured by the passage of time and

5

to minimize the danger of official punishment because of acts in the far-distant past. Such a time limit may also have the salutary effect of encouraging law enforcement officials promptly to investigate suspected criminal activity."

Therefore, in most instances, prosecutions are barred if the defendant points out that there was no indictment or other formal charge within the time period dictated by the statute of limitations. **See CRS Report to Congress Updated on April 9, 2007.**

A criminal charge is like a civil lawsuit in one respect, the time limit for filing against the defendant. The federal statute of limitations that applies to criminal charges says that once 5 years has passed from the commission of the offense, the federal government is barred from filing charges.

The federal statute of limitations is **18 USC 3282**, and it provides the following:

"Except as otherwise expressly provided by law, no person shall be prosecuted, tried, or punished for any offense, not capital, unless the indictment is found or the information is instituted within five years next after such offense shall have been committed." **See 18 USC 3282(a).**

The statute of limitations is an affirmative defense that can be waived either explicitly or by failure to raise it at or before trial on the untimely charge, **United States v. Baldwin**, 414 F.3d 791, 795 (7th Cir. 2005); **United States v. Titterington**, 374 F.3d 453, 458 (6th Cir. 2004); **United States v. Smith**, 373 F.3d 561, 563 (4th Cir. 2004).

**Rule 7(d) of the F.R.Cr.Proc**., allows the district court at the motion of the defendant, to strike surplusage from the indictment.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the above and foregoing was electronically filed this 14th day of March, 2012.

                                        Respectfully submitted,

                                        S/A J.C. Codias, Esq.
                                        Florida Bar No. 0471577
                                        825 So. Brickell Bay Drive
                                        Tower 3, Suite 1243
                                        Miami, Florida  33131
                                        Phone No.: (305) 372-8875

## EXHIBITS

1. Affidavit of Mr. Lazaro Prat.

2. Copy of Mr. Prat's Second Discovery Response.

3. Copies of letters dated January 5, 2012;  January 18, 2012 and January 27, 2012.

4. Corporate history of Advance reflecting June 2003 as the time when Mr. Prat first got involved with Advance, and July 2004 as the time when Mr. Prat sold Advance to the new

owner.

5.      Specific discovery requests made on January 18, 2012 as to Advance only.

6.   Page 6 of indictment stating on Paragraph 4 that "on or about August 4, 2004, Individual #1 [the new owner Alain Hernandez] took control of and acted as the sole signatory for the Advance Medical corporate account at Washington Mutual ending in 4354".

7.      Pages 6 and 7 of indictment stating on Paragraph 5 that "on or about June 3, 2003, paperwork was submitted to the Florida Department of Corporations making Lazaro Prat President of Advance Medical " and that on July 24, 2004 Individual #1 (the new owner) became President of Advance Medical.

8.    Corporate papers reflecting a Mr. Ferrero as the owner of Advance as of July 1, 2002 with provider applications signed on August 9, 2002 and on December 18, 2002 as contained in the government's discovery.

9.   Mr. Prat's ownership start date of June 12, 2002 with applications signed on September 24, 2003; November 17, 2003 and January 28, 2004 as contained in the government's discovery.

10.   Checks issued by former owners Ferrero and Pelayo from December 10, 2002 to June 3, 2003 as contained in the government's discovery.

11.   Checks issued by the new owner of Advance Alain Hernandez beginning in August 10, 2004 and ending on April 1, 2005 as contained in the government's discovery.

12.    Document from Washington Mutual Bank indicating the new owner Alain Hernandez became the sole owner and signatory of this account on August 4, 2004.

13. Checks issued by Mr. Prat between June 2003 and July 2004 as contained in the government's discovery.

13a. $ 59,155.26 paid to providers of different products A Quality Medical Supplies; InterMed; Just Right Medical Services; Red White and Blue; Cardit Corp.; PMC One; TDP Inc; BCH; Signius; during the time Mr. Prat owned Advance as contained in the government's discovery. At a 3.5 x 1 mark up this amount justifies about $200,000 in sales. (See Exhibit "13")

14. Deposits made into the account of Advance from June 2003 to July 2004 while Mr. Prat was the owner of Advance as contained in the government's discovery.

13b. $ 47,194.54 paid for rent; payroll taxes; salaries; state taxes; federal taxes; licenses; maintenance; tax preparer; insurance; employees; printing; Medicare workshops; computer repairs; stamps; office supplies; overpayments; telephone and e-mail; etc..during the time Mr. Prat owned Advance as contained in the government's discovery. (See Exhibit "13")

15. $ 11,671.22 as the total amount received by Advance from private insurance during the time Mr. Prat was the owner of Advance as contained in the government's discovery.

16. $44,332.93 as the total amount received by Advance from Medicare during the time Mr. Prat was the owner of Advance as contained in the government's discovery.

17. $28,000 per year reflected as the average received by Advance from Medicare from 1/1/00 to 2/20/04 ($116,183.05) as contained in the government's discovery. Mr. Prat took over Advance in June 2003 and sold it on or about July 24, 2004.

18. $30,000 per year reflected as the average received by Advance from Medicare from

1/1/00 to 11/10/03 ($122,848.67) as contained in the government's discovery. Mr. Prat took over Advance in June 2003 and sold it on or about July 24, 2004.

19. $976,401.58 billed retroactively to Medicare by the new owner Alain Hernandez reflecting dates of service beginning in February of 2004 when Mr. Prat was still the owner of Advance as contained in the government's discovery. **Only dates of purported services have been provided but not the dates when the claims were actually filed.**

**There are no other spreadsheet reflecting the dates when the remaining 3 million dollars in claims were actually filed with Medicare as charged in the indictment.**

20. **The dates of services on these claims are from 2/19/2004 to 10/31/2004 but there are no deposits of these amounts into the bank account of Advance while Mr. Prat was the owner of Advance from June 2003 to July 2004. (See exhibit # 19)**

21. The names of the patients billed by the new owner are not provided in the spreadsheet therefore Mr. Prat cannot provide this information to the court. **(See exhibit # 19)**

22. On January 18, 2012 the government was requested to provide copies of these claims filed by the new owner **that would have shown the dates when these claims were actually filed by the new owner.** The government did not produce this discovery. Presumably the government does not have this information. (See Exhibit # 3)

23. On January 18, 2012 the government was requested to provide copies of the bank statements of Washington Mutual Bank account ending in 4354 after August 4, 2004 when the new owner Alain Hernandez took over this bank account **which would have shown the dates when these claims were actually paid by Medicare and deposited into the new**

**owner's bank account.** The government did not produce this discovery. Presumably the government does not have this information. (See Exhibit # 3)