UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**         *
       Plaintiff,

                             *      **Case No: 11-20684-CR-PAS**

       v.

                             *

**LAZARO PRAT**
**LISETTE PRAT**
       Defendants.         *
_____/

**JOINT MOTION IN LIMINE PURSUANT TO RULES 104, 105, AND 403 OF THE FEDERAL RULES OF EVIDENCE**

    **COME NOW** the defendants **LAZARO PRAT** and **LISETTE PRAT** and respectfully

files this their motion in limine pursuant to Rules 104, 105 and 403 of the F.R.of Evid., and

state in support thereof.

**1.    These defendants are not charged with violation of 42 USC §1320 6b)(1)(2) No evidence of having paid referral fees by check or in cash is admissible.**
**None of the defendants in this case has been charged with having paid referral fees or kickbacks pursuant to 42 USC §1320 6(b)(1)(2) whether by check or in cash and the government cannot introduce any evidence as to any person having either paid or received referral fees or kickbacks by check or in cash during the time span of the charged conspiracy.**

**42 USC §1320 6b)(1)(2) states in its pertinent part.**

**"(2) Whoever knowingly and willfully offers or pays any remuneration (including any kickback, bribe, or rebate) directly or indirectly, overtly or covertly, in cash or in kind to any person to induce such person–**
**(A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service for which payment may be made in whole or in part under a Federal health care program, or ... shall be guilty of a felony and upon conviction thereof, shall be fined not more than $25,000 or imprisoned for not more than five years, or both."**

**This evidence will confuse the jury on the issue of guilt or innocence as to having filed false and fraudulent claims with Medicare. The 11th Circuit has already ruled on this issue.**

"5. Health: Mere fact that patients may have received illegal kickbacks for patronizing Medicare providers did not so "taint" any claims the providers made to Medicare on these patients' behalf as to make these claims fraudulent, within meaning of health care fraud statute, absent showing that any patient on whose behalf claim was submitted did not in fact receive what was prescribed or did not need what was delivered. 18 U.S.C.A. § 1347. United States v. Medina. 485 F.3d 1291 (11th Cir. 2007)"

2. "**Request Limiting Instruction as to having paid referral fees or kickbacks.** "Allegations that some patients may have received illegal kickbacks for patronizing any or all of the three (3) Medicare providers listed in the indictment does not so "taint" any claims the providers made to Medicare on these patients' behalf as to make these claims fraudulent, within meaning of health care fraud statute, absent showing that any patient on whose behalf claim was submitted did not in fact receive what was prescribed or did not need what was delivered. 18 U.S.C.A. § 1347. United States v. Medina. 485 F.3d 1291 (11th Cir. 2007)"

3. **Personal knowledge**. **The defendants have plead not guilty which includes a denial of the amounts billed and received from Medicare** as to the three entities charged. These defendants need a government witness with **personal knowledge** as to the amounts billed and received from Medicare as to the three entities, namely, Advanced Medical Equipment; Medline Pharmacy, and Advanced Pharmacy Inc.

If the witness is not the maker of any document to be introduced by the government and is simply a "records custodian" without personal knowledge of the underlying basis of the amounts in controversy his testimony will be **irrelevant and inadmissible hearsay.**

4. Any computer data witness must provide **specific and reliable evidence** as required by law firstly that the claim in question were "false or fraudulent" when filed by the provider and not simply a result of an oversight or an imperfect claim or a mistake by any government agency entrusted with receiving and processing Medicare claims.

"20. Sentencing and Punishment: For sentencing purposes, amount of loss that was caused by defendant's criminal misconduct must be proven by preponderance of evidence, and that burden must be satisfied with reliable and specific evidence. U.S.S.G. § 2B1.1, 18 U.S.C.A." United States v. Medina. 485 F.3d 1291 (11th Cir. 2007) at 2014."

**5.   If the government cannot provide any witness with <u>personal knowledge</u> supporting the specific and reliable evidence standard of the assertions made and charged in the indictment it is respectfully requested that this witness testimony not be allowed in evidence.**

**6.   <u>Don't tell the jury these defendants are presently incarcerated by using e-mails.</u> Unless these is a compelling legal reason that cannot be resolved by way of a stipulation the government should not be allowed to use e-mails from FDC to tell the jury the defendants are incarcerated.**

**7.   <u>No questions as to why the defendants cashed checks</u> or what was the cash needed for.  Writing checks to "cash" or cashing checks is not against the law and is not evidence of having filed false and fraudulent claims with Medicare in violation of 18USC §1347 and its conspiracy 18USC §1349 as charged. This allegation goes to the money laundering count.**

**"5. Health:  Mere fact that patients may have received illegal kickbacks for patronizing Medicare providers did not so "taint" any claims the providers made to Medicare on these patients' behalf as to make these claims fraudulent, within meaning of health care fraud statute, absent showing that any patient on whose behalf claim was submitted did not in fact receive what was prescribed or did not need what was delivered.  18 U.S.C.A. § 1347. <u>United States v. Medina</u>.  485 F.3d 1291 (11th Cir. 2007)"**

**"<u>Request Limiting Instruction as to having paid cash or having written checks payable to "cash" or cashing checks.</u>**

**"Evidence of having paid cash or having written checks payable to "cash" or cashing checks goes to the charge of Money Laundering and not to the charge of Health Care Fraud.  This evidence does not by itself prove that either one or both of these defendants filed false and fraudulent claims with the Medicare Program as charged in Count "1" of the indictment nor that the cash in question are the proceeds of Health Care Fraud".**

**8.   <u>No 404 (b) evidence.</u>  The defendants in this case have not received any notice of the government's intent to introduce 404(b) evidence of "other bad acts" in this case as required by the Standing Discovery Order of December 30, 2011, paragraph H, and as such these defendants have not prepared any defense to any possible "other bad acts" of the defendants.**

**Standing Discovery Order of December 30, 2011, paragraph H states,**

**"The government shall advise the defendants of its intention to introduce extrinsic act evidence pursuant to Rule 404(b), Federal Rules of Evidence. The Government shall provide <u>notice</u> regardless of how it intends to use the extrinsic evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal. Furthermore, the Government shall <u>apprise the defense</u> of the general nature of the evidence of the extrinsic acts."**

**<u>No list of names</u>**

**Both the original indictment and the Superceding Indictment charged 5 substantive counts. Each count provided 9 items of specific information; the Names of the charged Defendants in each Count; the Name of the Patient; the Medicare Claim Number; the Date of the Claim; the Name of the Company charged; the Code assigned to the medication in question; the description of the item of medication dispensed; the price billed to Medicare for that item; and the name of the specific name of the Doctor associated with each Count. These are the 5 substantive counts the defense prepared to defend.**

**On May 30, 2012, and on the eve of trial, the government provided the defense with about 700 pages of additional discovery. Amongst this discovery there is a list signed by a Medicare suspended doctor named Alicia Chilito containing 122 names of alleged "patients" with an "amounts submitted" designation.**

**The government had provided the defense with the name of this Medicare suspended doctor in reference to one (1) of the specific Counts in the indictment, namely patient ANA BONILLA, Count 5 in the indictment. The defense relied on this representation and began to prepare to meet this Count in the indictment.**

**This Medicare suspended doctor was presented with a list of names on May 22, 2012 asked to make an "X" mark next to each name indicating whether this patient was a "yes" or a "no".**

**The defense has no idea who these persons are; nor the Names of the charged Defendants as to each person named; nor the Name of the Company charged; nor the Code assigned to the medication in question; nor the Description of the Items of medication dispensed; nor the Dates for each claim forming the total included on this "list"; nor the Price billed to Medicare for each of those items; nor the name of the specific Doctor associated with each of these names; nor the dates of treatment.**

**The defense has no idea as to the medical condition of any of these names; nor the medical history of any of these names; nor the names of other doctors seen by any of**

4

these names over the years.

This "list of names" is 404(b) evidence in violation of the Standing Discovery Order of December 30, 2011, paragraph H.

It appears from the extensive nature of this list with its specific information as to each name that the government had this information well before May 22, 2012 and if it intended to use same at trial the defense should have been timely informed of these names in order to investigate and defend the allegations as to each of these names.

No patient Georgina Loredo

On May 30, 2012, and on the eve of trial, the government provided the defense with about 700 pages of additional discovery. Amongst this discovery there are the interview records 302 of a patient named Georgina Loredo.

This witness will testify that several years in the past she saw a claim she did not recognize and that she never went to a doctor Abdon Borges.

This person was interviewed on May 21, 2012.

Both the original indictment and the Superceding Indictment charged 5 substantive counts.  Georgina Loredo is not one of the 5 substantive counts in the indictment. Doctor Abdon Borges is not one of the doctors listed in the 5 substantive counts in the indictment.

The defense has no information as to this person. The defense has no idea as to the Medicare Claim Number; the Date of the Claim; the Name of the Company charged; the Code assigned to the medication in question; the description of the item of medication dispensed; nor the price billed to Medicare for the alleged item.

This is 404(b) evidence in violation of the Standing Discovery Order of December 30, 2011, paragraph H.

No Emerio Molano testimony

On May 30, 2012, and on the eve of trial, the government provided the defense with about 700 pages of additional discovery. Amongst this discovery there are the interview records 302 of a patient named Emerio Molano.

This witness will testify that he is a mental patient and at some unknown point in time

a dead person named Matos told him to go to Medline pharmacy to service his prescription and that he could get a $200 referral fee.

The defense has no information as to this person. This person is not a listed Count in the indictment. These defendants are not charged with paying referral fees in violation of 42 USC §1320 6b)(1)(2).

This person was interviewed on May 21, 2012.

This is 404(b) evidence in violation of the Standing Discovery Order of December 30, 2011, paragraph H.

<u>No additional corporation Amerigroup Distributor Inc.</u>

On May 30, 2012, and on the eve of trial, the government provided the defense with about 700 pages of additional discovery. Amongst this discovery there are banking records of a company named <u>Amerigroup Distributor Inc.</u>

Both the original indictment and the Superceding Indictment included the names of four (4) corporations aside from the three (3) charged companies, namely Pharmacy Services Inc., Fishing Charters of Miami, Inc., Metro Development Inc., and Rosy Construction Inc.

The defense relied on the names of these four (4) corporations for defense purposes.

The letter attached in response to the government's subpoena is dated May 21, 2012. The government waited until the last moment to subpoena these records. This case has been going on since September 29, 2011 with allegations dating back to July 2002 about 10 years ago.

This is 404(b) evidence in violation of the Standing Discovery Order of December 30, 2011, paragraph H

<u>"Request Limiting Instruction as to having used this corporation to deposit or cash checks.</u>

"Evidence of having paid cash or having written checks payable to "cash" or cashing checks goes to the charge of Money Laundering and not to the charge of Health Care Fraud. This evidence does not by itself prove that either one or both of these defendants filed false and fraudulent claims with the Medicare Program as charged in Count "1" of the indictment nor that the cash in question are the proceeds of Health

Care Fraud".

**No testimony of Josue Fernandez.**

On May 30, 2012, and on the eve of trial, the government provided the defense with about 700 pages of additional discovery. Amongst this discovery are the statements of one Josue Fernandez.

This witness was interviewed on May 23, 2012 on the eve of trial but the government had knowledge of this person since the very beginning of this case included both in the original indictment and in the superceding indictment. See page 7 of Superceding Indictment confirming knowledge by the government of the corporate history of Advance Medical Equipment.

This witness is being brought to testify as to other bad things done by Mr. Prat not contained in the indictment, i.e., "he was used to cash checks".
Neither Mr. or Mrs. Prat is being charged with cashing checks or paying referral fees to patients **violation of 42 USC §1320 6b)(1)(2)** nor of having someone else cash checks for them.

This is 404(b) evidence in violation of the Standing Discovery Order of December 30, 2011, paragraph H.

**9.   No expert "opinion" testimony.**   The government was asked to provide the existence of any "expert witness" and the government has indicated it will not use expert witnesses in this case. No fact witness can take the stand to provide an "opinion" as to the ultimate issue in controversy either overtly or covertly or directly or indirectly.

**10.   No bad acts of others in opening or closing statement.**   Throughout this case the government has previously advised the court that there are "medical doctors in jail" that may or may not be associated with the charges against these defendants. If the government has any medical doctor witness that will testify in this case subject to cross-examination that is permissible. But no statements as to the acts of others should be allowed unless and until such witness is named as one that will testify at trial.

**11.   No hearsay as to a dead patients that cannot be cross-examined.**   The 5 counts listed by the government contain on Count 4 a patient named Norma Gonzalez who passed away allegedly before the date of service by the pharmacy. The defense cannot cross-examine a dead patient as to the allegations and charges in this case and any government witness testifying as to this dead patient will be testifying strictly as to "hearsay" by looking at a patient chart; a spread sheet; a computerized entry; a death

**certificate or other form of hearsay without being subject to cross examination as to the allegations being made as to that patient.**

**Basis for in-limine request**

**10.** "**20. Sentencing and Punishment:** For sentencing purposes, amount of loss that was caused by defendant's criminal misconduct must be proven by preponderance of evidence, and that burden must be satisfied with reliable and specific evidence. U.S.S.G. § 2B1.1, 18 U.S.C.A." United States v. Medina. 485 F.3d 1291 (11th Cir. 2007) at 2014."

"**5. Health:** Mere fact that patients may have received illegal kickbacks for patronizing Medicare providers did not so "taint" any claims the providers made to Medicare on these patients' behalf as to make these claims fraudulent, within meaning of health care fraud statute, absent showing that any patient on whose behalf claim was submitted did not in fact receive what was prescribed or did not need what was delivered. 18 U.S.C.A. § 1347. United States v. Medina. 485 F.3d 1291 (11th Cir. 2007)"

**WHEREFORE**; It is respectfully requested this Honorable Court grant this motion.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was electronically filed this 6th day of June, 2012.

Respectfully submitted,

S/ J.C. Codias, Esq.
J.C. Codias, Esq.
Fla. Bar No. 0471577
825 So. Brickell Bay Drive
Tower 3, Suite 1243
Miami, Florida 33131
Phone: (305) 372-8875