

Filed by ___ D.C.

ELECTRONIC

**JULY 26, 2012**

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  11-20684-CR-PAS(s)(s)
18 U.S.C. § 1349
18 U.S.C. § 1347
18 U.S.C. § 2
18 U.S.C. § 1956(h)
18 U.S.C. § 371
18 U.S.C. § 982

UNITED STATES OF AMERICA

vs.

**LAZARO PRAT,**
**LISETTE LOPEZ PRAT, and**
**JOSUE FERNANDEZ,**

        **Defendants.**

_____/

## SECOND SUPERSEDING INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times relevant to this Second Superseding Indictment:

### The Medicare Program

1.      The Medicare Program ("Medicare") was a federal program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled.  The benefits available under Medicare were prescribed by statute and by federal regulations under the auspices of the United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS").  Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b).

3.     Part B of the Medicare Program was a medical insurance program that covered, among other things, certain physician and outpatient services, and other health care benefits, items, and services, including durable medical equipment ("DME"), that were medically necessary and ordered by licensed medical doctors or other qualified health care providers.  DME is equipment that is designed for repeated use and for a medical purpose, such as prosthetic limbs, back braces, knee braces, and wheelchairs.

4.     For Florida beneficiaries, Medicare Part B's insurance concerning DME and related health care benefits, items, and services, was administered by Palmetto Government Benefits Administrators ("Palmetto GBA"), pursuant to a contract with HHS.  Among Palmetto GBA's responsibilities, it received, adjudicated, and paid the claims of authorized DME suppliers that were seeking reimbursement for the cost of DME and other health care benefits, items, or services supplied or provided to Medicare beneficiaries.

### Medicare Billing Procedures

5.     A DME company that sought to participate in Medicare Part B and bill Medicare for the cost of DME and related benefits, items, and services was required to apply for and receive a "supplier number."  The supplier number allowed a DME company to submit bills, known as "claims," to Medicare to obtain reimbursement for the cost of DME and related health care benefits, items, and services that a DME company had supplied to beneficiaries.

6.     To receive payment from Medicare, a DME company, using its supplier number, would submit a health insurance claim form, known as a CMS-1500.  Medicare permitted DME

2

companies to submit a CMS-1500 electronically or by way of a paper claim form. The CMS-1500 required DME companies to provide certain important information, including: (a) the Medicare beneficiary's name and identification number; (b) the identification number of the doctor or other qualified health care provider who ordered the health care benefit, item, or service that was the subject of the claim; (c) the health care benefit, item, or service that was provided or supplied to the beneficiary; (d) the billing codes for the benefit, item, or service; and (e) the date upon which the benefit, item, or service was provided or supplied to the beneficiary.

7.      Medicare, through Palmetto GBA, generally would pay a substantial portion of the cost of the DME or related health care benefits, items, and services that were medically necessary and ordered by licensed doctors or other licensed, qualified health care providers.

8.      Payments under Medicare Part B were often made directly to the DME company rather than to the patient/beneficiary. For this to occur, the beneficiary would assign the right of payment to the DME company or other health care provider. Once such an assignment took place, the DME company would assume the responsibility for submitting claims to, and receiving payments from, Medicare.

9.      Under Medicare rules and regulations, DME or other related health care benefits, items or other services, must be medically necessary and ordered by a licensed doctor or other licensed, qualified health care provider in order to be reimbursed by Medicare.

## The Corporations

10.      Advance Medical Equipment, Inc. ("Advance Medical"), a Florida corporation, located at 7220 Northwest 36th Street, Suite 308B, Miami, Florida 33166, was purportedly engaged in the business of providing DME to Medicare beneficiaries. Advance Medical had a Medicare

3

supplier number and was eligible to receive reimbursement from Medicare for durable medical equipment rendered to beneficiaries.

11.     Medline Pharmacy Corp. ("Medline Pharmacy"), a Florida corporation, located at 7299 West Flagler Street, Miami, Florida 33144, was purportedly engaged in the business of providing DME to Medicare beneficiaries. Medline Pharmacy had a Medicare supplier number and was eligible to receive reimbursement from Medicare for durable medical equipment rendered to beneficiaries.

12.     Advanced Pharmacy, Inc. ("Advanced Pharmacy"), a Florida corporation, located at 251 Park Boulevard, Miami, Florida 33126, was purportedly engaged in the business of providing DME to Medicare beneficiaries.  Advanced Pharmacy had a Medicare supplier number and was eligible to receive reimbursement from Medicare for durable medical equipment rendered to beneficiaries.

13.     Pharmacy Services, Inc. ("Pharmacy Services"), was a Florida corporation located at 1442 Southwest 93rd Place, Miami, Florida 33174.

14.     Fishing Charters of Miami, Inc. ("Fishing Charters"), was a Florida corporation located at 1442 Southwest 93rd Place, Miami, Florida 33174.

15.     Metro Property Development, Inc. ("Metro Property"), was a Florida corporation located at 1442 Southwest 93rd Place, Miami, Florida 33174.

16.     Rosy Construction, Inc. ("Rosy Construction"), was a Florida corporation located at 1442 Southwest 93rd Place, Miami, Florida 33174.

17.     Amerigroup Distributor, Inc., was a Florida corporation located at 495 West 39th Place, Hialeah, Florida 33012.

## The Defendants

18.     Defendant **LAZARO PRAT** was a resident of Miami-Dade County.  From on or about June 3, 2003, through on or about July 8, 2004, **LAZARO PRAT** was president of Advance Medical.  From on or about July 8, 2004, through on or about July 28, 2004, **LAZARO PRAT** was treasurer of Advance Medical.  From on or about July 28, 2004, through on or about January 26, 2005, **LAZARO PRAT** was vice president of Advance Medical.  From on or about June 29, 2005, through on or about July 28, 2008, **LAZARO PRAT** was president and director of Pharmacy Services.  From on or about April 10, 2006, through on or about July 28, 2008, **LAZARO PRAT** was president and director of Fishing Charters.  From on or about December 13, 2006, through on or about September 26, 2008, **LAZARO PRAT** was president and director of Metro Property.  Since on or about February 21, 2007, through the present, **LAZARO PRAT** has been the president, director, and registered agent of Rosy Construction.

19.     A.H. was a resident of Miami-Dade County.  From on or about July 28, 2004, through on or about January 26, 2005, A.H. was president, vice-president, secretary, and treasurer of Advance Medical.

20.     Defendant **LISETTE LOPEZ PRAT** was a resident of Miami-Dade County.  From on or about August 2, 2004, through on or about July 29, 2008, **LISETTE LOPEZ PRAT** was director, president, vice-president, secretary, and treasurer of Medline Pharmacy.

21.     On or about March 22, 2008, **LISETTE LOPEZ PRAT** and **LAZARO PRAT** were married.  At various times relevant to this Second Superseding Indictment, **LAZARO PRAT** and **LISETTE LOPEZ PRAT** resided at 1442 Southwest 93rd Place, Miami, Florida 33174.

5

22.     Defendant **JOSUE FERNANDEZ** was a resident of Miami-Dade County.  From on or about July 26, 2006, through on or about September 14, 2007, **FERNANDEZ** was president and registered agent of Amerigroup Distributor, Inc.

23.     Eudaldo Esteban Torres was a resident of Miami-Dade County.  From on or about January 18, 2006, through on or about February 19, 2008, Torres was president and registered agent of Advanced Pharmacy.

## COUNT 1
### Health Care Fraud Conspiracy
### (18 U.S.C. § 1349)

1.     Paragraphs 1 through 23 of the General Allegations section of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein.

2.     From at least as early as on or about July 16, 2002, and continuing through on or about August 8, 2008, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

**LAZARO PRAT**
**and**
**LISETTE LOPEZ PRAT,**

did knowingly and willfully combine, conspire, confederate and agree with each other, Eudaldo Esteban Torres, and others known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1347, that is, to execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services.

6

### Purpose of the Conspiracy

3.      It was the purpose of the conspiracy for the conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent claims to Medicare; (b) concealing the submission of false and fraudulent claims to Medicare; and (c) diverting the fraud proceeds for their personal use and benefit.

### Manner and Means of the Conspiracy

The manner and means by which the defendants and their conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4.      On or about July 16, 2002, **LAZARO PRAT** opened a corporate bank account at Washington Mutual, ending in 4354, on behalf of Advance Medical. **LAZARO PRAT** was the sole signatory on the account.  On or about August 4, 2004, A.H. took control of and acted as sole signatory for the Advance Medical corporate account at Washington Mutual ending in 4354.

5.      On or about June 3, 2003, paperwork was submitted to the Florida Department of Corporations making **LAZARO PRAT** president of Advance Medical.  On or about July 8, 2004, **LAZARO PRAT** was made treasurer of Advance Medical, and later, on or about July 28, 2004, **LAZARO PRAT** was made vice president of the company.  Also on or about July 28, 2004, A.H. became president of Advance Medical.

6.      On or about September 24, 2003, November 17, 2003, and January 28, 2004, **LAZARO PRAT** submitted applications to Medicare on behalf of Advance Medical in order to obtain a supplier number, and to name himself as Advance Medical's president.  On or about July 28, 2004, A.H. submitted an application to Medicare naming himself as Advance Medical's president.

7

7.    On or about July 30, 2004, **LAZARO PRAT**, on behalf of Advance Medical, submitted an application to have all the money Medicare paid to Advance Medical deposited into the company's Washington Mutual account ending in 4354.

8.    From on or about April 22, 2004, through on or about January 26, 2005, **LAZARO PRAT** and A.H., on behalf of Advance Medical, submitted and caused the submission of $3,918,136 in false and fraudulent Medicare claims and obtained $559,980 of reimbursement from Medicare for DME which was neither ordered by a physician nor provided to the beneficiary as claimed.

9.    During that same period, **LAZARO PRAT** received $73,840 worth of cash and checks drawn on Advance Medical's Washington Mutual account ending in 4354. **LISETTE LOPEZ PRAT** received $5,780 worth of checks drawn on Advance Medical's Washington Mutual account ending in 4354.

10.    On or about July 7, 2004, **LISETTE LOPEZ PRAT** signed a lease as Medline Pharmacy's president for the company to be located at 7299 West Flagler Street, Miami, Florida 33144.

11.    On or about August 2, 2004, paperwork was submitted to the Florida Department of Corporations incorporating Medline Pharmacy and making **LISETTE LOPEZ PRAT** director, president, vice-president, secretary, and treasurer of Medline Pharmacy.

12.    On or about November 5, 2004, **LISETTE LOPEZ PRAT** submitted an application to Medicare on behalf of Medline Pharmacy in order to obtain a supplier number, and to name herself as Medline Pharmacy's president.

13.    On or about March 11, 2005, **LISETTE LOPEZ PRAT**, on behalf of Medline Pharmacy, submitted an application to Medicare to have all Medicare payments to the company

8

deposited into the company's corporate account at Bank of America ending in 7814.  **LAZARO PRAT** and **LISETTE LOPEZ PRAT** were signatories for Medline Pharmacy's corporate account at Bank of America ending in 7814.

14.    From on or about February 8, 2005, through on or about July 29, 2008, **LAZARO PRAT** and **LISETTE LOPEZ PRAT**, on behalf of Medline Pharmacy, submitted and caused the submission of $16,684,461 in false and fraudulent Medicare claims and obtained $10,638,800 of reimbursement from Medicare for DME which was neither ordered by a physician nor provided to the beneficiary as claimed.

15.    **LAZARO PRAT** and **LISETTE LOPEZ PRAT** used the proceeds of the health care fraud for their personal benefit and to further the fraud.  **LAZARO PRAT** received approximately $289,000 worth of checks drawn on Medline Pharmacy's Bank of America account ending in 7814, and **LOPEZ PRAT** received approximately $1.4 million worth of checks from the same account. **LAZARO PRAT's** companies also received funds through checks drawn on Medline Pharmacy's Bank of America account ending in 7814 as follows: Pharmacy Services received approximately $1.7 million; Fishing Charters received approximately $441,000; and Rosy Construction received approximately $20,000.

16.    On or about January 18, 2006, paperwork was submitted to the Florida Department of Corporations incorporating Advanced Pharmacy and naming Eudaldo Esteban Torres president and registered agent of the company.

17.    On or about January 28, 2006, Eudaldo Esteban Torres opened a corporate account for Advanced Pharmacy at Bank of America ending in 1217.  Torres signed as the company's president and secretary and **LAZARO PRAT** signed as an authorized signor.

9

18.    On or about February 28, 2006, Eudaldo Esteban Torres submitted an application to Medicare on behalf of Advanced Pharmacy in order to obtain a supplier number, and to name himself as Advanced Pharmacy's director.

19.    On or about March 1, 2006, Eudaldo Esteban Torres signed a lease as Advanced Pharmacy's president for the company to be located at 251 Park Boulevard, Miami, Florida 33126.

20.    On or about November 7, 2007, **LAZARO PRAT** instructed Eudaldo Esteban Torres to submit an application to Medicare on behalf of Advanced Pharmacy to have all Medicare payments to the company deposited into the company's corporate account at Bank of America ending in 1217.

21.    From on or about June 13, 2006, through on or about February 19, 2008, **LAZARO PRAT** and Eudaldo Esteban Torres on behalf of Advanced Pharmacy, submitted and caused the submission of $6,217,623 in false and fraudulent Medicare claims and obtained $4,202,719 of reimbursement from Medicare for DME which was neither ordered by a physician nor provided to the beneficiary as claimed.

22.    During that same period, **LAZARO PRAT** received approximately $18,600 worth of checks drawn on Advance Pharmacy's Bank of America account ending in 1217, and Eudaldo Esteban Torres received approximately $491,000 worth of checks from the same account. **LAZARO PRAT's** companies received funds through checks drawn on Advance Pharmacy's Bank of America account ending in 1217 as follows: Pharmacy Services received approximately $949,000; Fishing Charters received approximately $541,000; Metro Property received approximately $273,000; and Rosy Construction received approximately $112,000.

All in violation of Title 18, United States Code, Section 1349.

10

## COUNTS 2–6
## Health Care Fraud
### (18 U.S.C. § 1347)

1.      Paragraphs 1 through 23 of the General Allegations section of this Second Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.      From on or about July 16, 2002, through on or about August 8, 2008, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

### LAZARO PRAT
### and
### LISETTE LOPEZ PRAT,

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud Medicare, a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of said health care benefit program, that is, the defendants, through Advance Medical, Medline Pharmacy, and Advanced Pharmacy, submitted and caused the submission of false and fraudulent claims to Medicare, seeking reimbursement for the cost of various DME items and services.

### Purpose of the Scheme and Artifice

3.      It was the purpose of the scheme and artifice for the defendants to unlawfully enrich themselves by, among other things: (a) submitting or causing the submission of false and fraudulent claims to Medicare; (b) concealing the receipt of the fraud proceeds; and (c) diverting the fraud proceeds for the personal use and benefit of themselves and others.

11

## The Scheme and Artifice

4.     The allegations in paragraphs 4 through 22 of the Manner and Means section of Count 2 of this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution or Attempted Execution of the Scheme and Artifice

5.     On or about the dates specified as to each count below, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants, **LAZARO PRAT** and **LISETTE LOPEZ PRAT**, in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in that, the defendants submitted and caused the submission of false and fraudulent Medicare claims, representing that Advance Medical, Medline Pharmacy, and Advanced Pharmacy provided the identified DME to Medicare beneficiaries pursuant to physicians' orders and prescriptions:

12

| Count | Defendants | Medicare Claim Number; Beneficiary | Approx. Date of Claim | DME Company | Product Code; Item Claimed; Approximate Amount Claimed |
|---|---|---|---|---|---|
| 2 | **LAZARO PRAT** and **LISETTE LOPEZ PRAT** | 107253759399000; "M.A." | 9/10/2007 | Medline Pharmacy | E1390; Oxygen Concentrator; $198 |
| 3 | **LAZARO PRAT** and **LISETTE LOPEZ PRAT** | 107253759381000; "J.A." | 9/10/2007 | Medline Pharmacy | E1390; Oxygen Concentrator; $198 |
| 4 | **LAZARO PRAT** and **LISETTE LOPEZ PRAT** | 107253759372000; "J.V." | 9/10/2007 | Medline Pharmacy | E1390; Oxygen Concentrator; $198 |
| 5 | **LAZARO PRAT** | 108008729414000; "T.O." | 1/8/2008 | Advanced Pharmacy | E1390; Oxygen Concentrator; $199 |
| 6 | **LAZARO PRAT** | 108109701026000; "N.G." | 4/18/2008 | Advanced Pharmacy | J7605; Arformoterol ; $566 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## Count 7
### Money Laundering Conspiracy
### (18 U.S.C. § 1956(h))

From in or around July 2003, and continuing through in or around December 2011, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendants,

13

**LAZARO PRAT,**
**LISETTE LOPEZ PRAT,**
**and**
**JOSUE FERNANDEZ,**

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, and agree with each other and with others, known and unknown to the Grand Jury, to commit offenses against the United States in violation of Title 18, United States Code, Sections 1956 and 1957, to wit:

a.      to knowingly conduct and attempt to conduct a financial transaction affecting interstate commerce involving the proceeds of specified unlawful activity, knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and knowing that the financial transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.      to knowingly engage in a monetary transaction by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of value greater than $10,000, such property having been derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

It is further alleged that the specified unlawful activity is health care fraud, in violation of Title 18, United States Code, Sections 1349 and 1347.

All in violation of Title 18, United States Code, Section 1956(h).

14

## COUNT 8
### Conspiracy to Defraud the United States
### and Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.     Paragraphs 1 through 23 of the General Allegations section of this Second Superseding Indictment are realleged and incorporated by reference as if fully set forth herein.

2.     From at least as early as on or about July 16, 2002, and continuing through on or about August 8, 2008, in Miami-Dade County, in the Southern District of Florida, and elsewhere, the defendant,

### LAZARO PRAT,

did willfully, that is, with the intent to further the objects of the conspiracy, and knowingly combine, conspire, confederate and agree with others known and unknown to the Grand Jury, to commit certain offenses against the United States, that is,

> a.   to defraud the United States by impairing, impeding, obstructing, and defeating, through deceitful and dishonest means, the lawful government functions of the United States Department of Health and Human Services in its administration and oversight of the Medicare program; and
>
> b.   to violate Title 42, United States Code, Section 1320a-7b(b)(2) by knowingly and willfully offering and paying any remuneration, including, kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to a person to induce such person to purchase, lease, order, and arrange for and recommend the purchasing, leasing and ordering of any good, facility, service and item for which payment may be made in whole and in part by a federal health care program, that is, Medicare.

15

## Purpose of the Conspiracy

3.     It was the purpose of the conspiracy for the defendant and his conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes, directly and indirectly, to Medicare beneficiaries who agreed to allow Medline Pharmacy and Advanced Pharmacy to bill Medicare using their identification numbers for durable medical equipment; (b) submitting and causing the submission of claims to Medicare for DME at Medline Pharmacy and Advanced Pharmacy; and (c) diverting the Medicare proceeds for their personal use and benefit.

## Manner and Means

The manner and means by which the defendant and his conspirators sought to accomplish the purpose and object of the conspiracy included, among others, the following:

4.     **LAZARO PRAT** recruited conspirators to serve as nominal owners of various companies in Miami-Dade County to conceal **PRAT**'s control of the companies.

5.     **LAZARO PRAT** instructed his conspirators to complete Medicare applications on behalf of each of their respective DME companies.  In the Medicare applications, the conspirators acknowledged that the payment of kickbacks for medical services violates Medicare regulations, and the conspirators agreed not to make such payments.

6.     **LAZARO PRAT** and his conspirators, in violation of Medicare rules and regulations, paid kickbacks and bribes to Medicare beneficiaries who agreed to have Medline Pharmacy and Advanced Pharmacy use their identification numbers to bill Medicare for durable medical equipment.  **LAZARO PRAT** and his conspirators paid for such referrals without regard to the

16

Medicare beneficiaries' actual medical condition, and without regard to whether durable medical equipment was medically necessary for the Medicare beneficiaries' health.

     7.     To facilitate the payment of illegal cash kickbacks, **LAZARO PRAT** and his conspirators issued checks payable from Medline Pharmacy and Advanced Pharmacy to shell corporations controlled by conspirators. Thereafter, conspirators utilized the funds to make illegal cash kickback payments to Medicare beneficiaries.

### Overt Acts

In furtherance of the conspiracy, and to accomplish its purpose and objects, at least one of the conspirators committed, or caused to be committed, in Miami-Dade and Broward Counties, in the Southern District of Florida, the following overt acts, among others:

     1.     On or about August 28, 2007, **LAZARO PRAT** withdrew approximately $4,674 from the Medline account at Bank of America ending in 4354, via check number 4083.

     2.     On or about September 5, 2007, **LAZARO PRAT** withdrew approximately $5,600 from the Medline account at Bank of America ending in 4354, via check number 4109.

     3.     On or about November 7, 2007, **LAZARO PRAT** instructed Eudaldo Esteban Torres to submit an application to Medicare on behalf of Advanced Pharmacy to have all Medicare payments to the company deposited into the company's corporate account at Bank of America ending in 1217.

     2.     On or about December 13, 2007, **LAZARO PRAT** withdrew approximately $4,847 from the Medline account at Bank of America ending in 4354, via check number 4125.

All in violation of Title 18, United States Code, Section 371.

## FORFEITURE
### (18 U.S.C. § 982)

1.  The allegations contained in this Second Superseding Indictment are re-alleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeiture to the United States of America of certain property in which the defendants, **LAZARO PRAT, LISETTE LOPEZ PRAT,** and/or **JOSUE FERNANDEZ** have an interest.

2.  Upon conviction of a violation of Title 18, United States Code, Sections 1347, 1349 or 371, as alleged in Counts 1-6, and 8, of this Second Superseding Indictment, any defendant so convicted shall forfeit to the United States all of his or her right, title and interest in any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such violation, pursuant to Title 18, United States Code, Section 982(a)(7).

3.  Upon conviction of a violation of Title 18, United States Code, Section 1956(h), as alleged in Count 7 of this Second Superseding Indictment, any defendant so convicted shall forfeit all of his or her respective right, title and interest to the United States in any property, real or personal, involved in such violation, or in any property traceable to such property, pursuant to Title 18, United States Code, Section 982(a)(1).

4.  The property which is subject to forfeiture includes, but is not limited to, the following:

    (a)  a sum of money equal in value to any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of the violations alleged in this Second Superseding Indictment, which the United States will seek as a forfeiture money judgment against each defendant jointly and severally as part of their respective sentence;

18

(b)     funds, including interest, up to the amount of $21,000 in account ending in 0271 at City National Bank that was originally derived from Bank of America account number ending in 8768 in the name of Rosy Construction, Inc;

(c)     all principal, deposits, interest, dividends and other amounts credited to Bank of America account number ending in 3901 in the name of Lazaro Prat;

(d)     real property located at 555 NE 15th Street, Apartment 25H, Miami, Florida 33132;

(e)     real property located at 403 NW 72nd Avenue, Unit 415, Building F, Miami, Florida 33126;

(f)     real property located at 900 Biscayne Boulevard, Unit 3803, Miami, Florida 33132;

(g)     real property located at 1442 SW 93rd Place, Miami, Florida 33175;

(h)     real property located at 8040 NW 95th Street, Hialeah Gardens, Florida 33016;

(i)     real property located at 10227 NW 9th Street Circle, Unit 207 Building 3, Miami, Florida 33172;

(j)     real property located at 17391 SW 290th Street, Homestead, Florida 33033;

(k)     one (1) 2006 Mercedes-Benz, VIN WDBNG70J26A468364; and

(l)     one (1) 2010 Toyota, VIN 5TFJU5F14AX004261.

19

All pursuant to Title 18, United States Code, Sections 982(a)(7) and 982(a)(1), and the procedures set forth at Title 21, United States Code, Section 853, as made applicable through Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

_____, Chief, Crim. Div.
WIFREDO A. FERRER
UNITED STATES ATTORNEY

_____
ERIC E. MORALES
ASSISTANT UNITED STATES ATTORNEY

20

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA          CASE NO. _____ 11-20684-CR-PAS(s)(s) _____

vs.

**CERTIFICATE OF TRIAL ATTORNEY***

LAZARO PRAT, et al.,

                    Defendants.          **Superseding Case Information:**
_____/

Court Division: (Select One)          New Defendant(s)          Yes __X__   No _____
                                       Number of New Defendants          1
_X__  Miami ____  Key West             Total number of counts           8
____  FTL   ____  WPB    ____  FTP

I do hereby certify that:

1.   I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.   I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.   Interpreter:     (Yes or No)     Yes
     List language and/or dialect      Spanish

4.   This case will take   7   days for the parties to try.

5.   Please check appropriate category and type of offense listed below:
     (Check only one)                                      (Check only one)

     I     0  to  5 days     _____          Petty       _____
     II    6  to 10 days     ___X___          Minor       _____
     III   11 to 20 days     _____          Misdem.     _____
     IV    21 to 60 days     _____          Felony      ___X___
     V     61 days and over  _____

6.   Has this case been previously filed in this District Court?  (Yes or No)     Yes
     If yes:
     Judge:     Patricia Seitz                  Case No.   11-20684-CR-PAS
     (Attach copy of dispositive order)
     Has a complaint been filed in this matter?          (Yes or No)     No
     If yes:
     Magistrate Case No.                        _____
     Related Miscellaneous numbers:             _____
     Defendant(s) in federal custody as of      _____
     Defendant(s) in state custody as of        _____
     Rule 20 from the     _____       District of   _____

     Is this a potential death penalty case? (Yes or No)     No

7.   Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to October 14, 2003?  _____ Yes   ___X___ No

8.   Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to September 1, 2007?  _____ Yes   ___X___ No

                                        ERIC MORALES
                                        ASSISTANT UNITED STATES ATTORNEY
                                        Court No. A5500886

*Penalty Sheet(s) attached                                    REV 4/8/08

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

<u>PENALTY SHEET</u>

**Defendant's Name**: **Lazaro Prat**

**Case No**:   11-20684-CR-PAS(s)(s)

Count #: 1

Health Care Fraud Conspiracy

Title 18, United States Code, Section 1349

**\* Max.Penalty**: 10 years' imprisonment

Counts #: 2-6

Health Care Fraud

Title 18, United States Code, Section 1347

**\* Max.Penalty**: 10 years' imprisonment as to each count

Count #: 7

Money Laundering Conspiracy

Title 18, United States Code, Section 1956(h)

**\* Max.Penalty**: 20 years' imprisonment

Count #: 8

Conspiracy to Defraud the United States and Pay Health Care Kickbacks

Title 18, United States Code, Section 371

**\* Max.Penalty**: 5 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:** Lissette Lopez Prat

**Case No:** 11-20684-CR-PAS(s)(s)

Count #: 1

Health Care Fraud Conspiracy

Title 18, United States Code, Section 1349

**\* Max.Penalty:** 10 years' imprisonment

Counts #: 2-6

Health Care Fraud

Title 18, United States Code, Section 1347

**\* Max.Penalty:** 10 years' imprisonment as to each count

Count #: 7

Money Laundering Conspiracy

Title 18, United States Code, Section 1956(h)

**\* Max.Penalty:** 20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name**: **Josue Fernandez**

**Case No**:   11-20684-CR-PAS(s)(s)

Count #: 7

Money Laundering Conspiracy

Title 18, United States Code, Section 1956(h)

**\* Max.Penalty**: 20 years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**