UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO: 11-cr-20684-SEITZ (MORENO)

UNITED STATES OF AMERICA,

                Plaintiff,

v.

LAZARO PRAT,

                Defendant,

**DEFENDANT'S GUIDELINE OB JECTIONS AND REQUEST FOR BELOW GUIDELINE SENTENCE WITH INCORPORATED MEMORANBDUM OF LAW**

    The Defendant, Lazaro Prat by and through his undersigned counsel, pursuant to Rule 32, Federal Rules of Criminal Procedure, and the Fifth Amendment to the United States Constitution, respectfully registers his objections to the Pre-Sentence Investigation Report (hereinafter" PSI") Undersigned counsel and Prat had an adequate opportunity to confer and thoroughly review the PSI in accordance with *United States vs. Aleman,* 832 F. 2d 142, 144 note 6 (11th Cir. 1987). In support thereof he states as follows:

## I. INTRODUCTION

    1. Pursuant to *United States v. Booker*, 543 U.S. 220 (2005), the federal sentencing process has adopted a three (3) step approach. (See Fed. R. Crim. P. 11(M), amended December 1, 2007, *United States v. Pugh,* 515 F. 3d 1179 (11th Cir. 2008) and § 1B1.1, Amendment 741, effective November 1, 2010.) First, the Court is to resolve any disputed guideline issues and determine the *advisory* guideline range. To that end, pursuant

to paragraph 9 (1-3) of the written plea agreement, the parties agree the applicable guideline section in this case is § 2S1.1, the value of the currency (AND FRAUD) is more than $7,000,000; but less than $20,000,000 and **Lazaro Prat** should receive a three (3) level increase for his leadership role in the case. **The PSR adopts the guideline calculations agreed to by the parties; however, it increased the base offense level by two levels based on the assessment that the amount of fraud and money laundering was more than 20 million. See PSR Par. 40. It also added <u>an additional</u> level for role in the case (4) See PSR Par. 44.** These **enhancements are not addressed in the plea agreement.** We respectfully object to many of these, unanticipated, enhancements. Additionally, the PSR fails to grant a three level reduction for acceptance of responsibility and also adds an additional 2 levels by concluding that the offense involved "sophisticated money laundering". See PSR Par. 42, 48. This enhancement was not addressed by the parties in the written plea agreement, is not supported by the Offense Conduct and does not meet the required criteria described in U.S.S.G. 2S1.1B(3), the commentary, application notes and case law.

      2. Second, the Court is to consider if there are any factors that warrant a departure from the *advisory* guideline range. "The application of the guidelines is not complete until the departures, if any that are warranted are appropriately considered. The PSR fails to identify any additional factors that may warrant a downward departure from the advisory guidelines. We believe there are numerous mitigating factors for this Court to deviate from the advisory sentencing guidelines. They are detailed below.

3. Finally, the Court is to consider all of the sentencing factors of 18 USC § 3553(a). As set forth more fully below, we believe there are sentencing factors to be considered by the Court in fashioning *a reasonable but not greater than necessary sentence.*

## II. OBJECTIONS TO GUIDELINE CALCULATION

**Base Offense Level – Page 14, Paragraph 39**

We object to the increase in the base offense levels based on an amount over $20,000,000 but less than $50,000.000. This is erroneous and the agreed upon guideline in the plea agreement is for an increase of 20 levels for more than $7,000,000 and less than $20,000,000 or a base offense level of 30.

**Adjustment for Role in the Offense- Page 14, Paragraph 44**

We object to a 4 level increase in the guidelines based on leadership. This is erroneous and the guideline agreed to in the plea agreement for role was an increase of 3, not 4.

**Acceptance of Responsibility- Page 14, Paragraph 48**

We object to the failure to grant acceptance of responsibility. The written acceptance was not sent to the USPO until November 26, 2012. [i] A copy is attached hereto. Prat pled guilty, agreed to a factual proffer and accepts full responsibility. A three level decrease for acceptance of responsibility was agreed to by the parties in the plea agreement.

**Sophisticated Money Laundering- Page 14, Paragraph 42**

We object to the two level increases for sophisticated money laundering. The plea agreement was left open in reference to this guideline allowing each side to argue for their position. We believe that that the increase in the PSR is erroneous, is inconsistent with the

3

guideline, application notes, commentary and case law. We submit, **there was nothing especially complex or intricate pertaining to the execution or concealment of this offense (see § 2S1.1, comment. (n.5(A)).** Pursuant to the above referenced commentary note, although other corporations were employed to make the transactions appear legitimate, the money was laundered through legitimate businesses and legitimate business accounts. Specifically, all the corporations were not used to <u>conceal the ownership</u> of the funds and in fact, a simple search of corporations would immediately disclose that Prat incorporated and was President and or affiliated with the companies. These corporations were located at the Prat residence. Notably, Rosy Construction, Inc., was a corporation that was previously involved in legitimate real estate development prior to and during the offense conduct. The funds were deposited into the account, not to secrete ownership, but for use in the business of developing real estate. Specifically these funds were used, in part to build a commercial mall, which, pursuant to the plea agreement has been forfeited to the United States. Further, this offense did **not** involve two or more levels (so-called 'layering') of transactions, transportation, transfers, or transmissions involving criminally derived funds that were intended to appear legitimate. Prat did not use nominee owners to hide the corporations, use lawyers accounts, use off shore accounts, did not use black market currency exchanges or take any additional steps to conceal the funds which is required to establish "sophistication" In the sister guideline for fraud courts have consistently held that, ….the government must show that the scheme in question "when viewed as a whole, was notably more intricate than the garden variety . . . scheme." Id. at 910. *United States v. Hance*, 501 F.3d 900, 910-911

(8th Cir. 2007) (holding renting a post office box under an assumed name, and using the box as a return address in national mailings to victims which included fake testimonials, did not distinguish case from multitude of mail fraud cases so as to support enhancement for sophisticated means); see also *United States v. Rice*, 52 F.3d 843 (10th Cir. 1995) (finding defendant's false claim to have paid withholding taxes that he did not pay did not warrant "sophisticated means" enhancement).

In our case, this truly is the run of the mill money laundering case and there is not the additional levels of concealment necessary to support the additional two level enhancement.

**ADVISORY GUIDELINE COMPUTATION**

| | |
|---|---|
| Base offense level- | 6 |
| More than 7M | 20 |
| (8) Health Care Loss 7M> | 3 |
| Offender Characteristic- 1956 | 2 |
| Adjustment for role- | 3 |
| Adjusted Base Offense Level | <u>34</u> |
| Acceptance of Responsibility | <u>-3</u> |
| Adjusted Advisory Guideline | 31 |
| Criminal History I- | 108-135 months |

### III. SENTENCING MEMORANDUM

Lazaro Prat appears before this Court for sentencing after having pleading guilty to a conspiracy to commit health care fraud in violation of 18 USC 1349 and conspiracy to commit money laundering in violation 18 USC 1956. Notwithstanding the above, "the court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 USC § 3553(a). As this Court is aware, district courts are now free from the mandatory nature of the Federal Sentencing Guidelines. *United States. v. Booker,* 543 U.S. 220 (2005); *Spears v. United States*, 129 S. Ct. 840 (2009); see also *United States v. Ranum,* 353 F. Supp. 2nd 984 (E.D. Wis. 2005) (Adelman, J.) (holding "*Booker* was not an invitation to do business as usual.") The Supreme Court's latest decisions emphasize district courts have wide discretion to fashion an appropriate sentence and that courts of appeals will not disturb those sentences absent an abuse of discretion. *Gall v. United States,* 522 U.S. 38 (2007) (finding a variance to probation for a drug offender reasonable); *Kimbrough v. United States*, 522 U.S. 85 (2007)(holding that the Sentencing Guidelines are merely advisory in every respect; judges are free to disagree with them and sentence individuals reasonably). Courts are free to depart from the Guidelines based solely upon disagreement with the Guidelines so long as the court states its disagreement along with sufficient justification for the extent of the departure. See *United States v. Parris,* 573 F. Supp. 2nd 744, 754-755 (E.D.N.Y. 2008)(citing *United States v. Cutler*, 520 F. 3d 136 (2nd Cir. 2008) and *United States v. Gall*, 128 S. Ct. 586 (2007)(departing from 360 months to 60 months (84.5% downward variance) considering the defendant's personal history and characteristics, finding that a "one-size-fits-all" approach to sentencing is not appropriate in securities fraud case.)

In particular, the Eleventh Circuit repeatedly has affirmed below guideline sentences after *Booker*. See *United States v. Irey*, 563 F. 3d 1223 (11th Cir. 2009)(affirming variance from level 43 (life) to 210 months in "utterly gruesome" case recognizing that sentencing is the most difficult job a district judge performs); *United States v. Anderson*, 267 Fed. App'x 84 (11th Cir.2008)(affirming sentence of probation with home-confinement for white collar defendant where Guidelines were 18 to 24 months and prosecutor was requesting 18 month sentence, explaining that under *Gall*, district courts had wide discretion at sentencing); *United States v. McBride*, 511 F. 3d 1293 (11th Cir.2007)(affirming variance from 151 to 188 months to 84 months in child porn case; *United States v. Clay*, 483 F. 3d 739 (11th Cir. 2007)(affirming 60 month sentence even though the Guidelines were 188 to 235 months based on post-offense rehabilitation; *United States v. Mathis*, 186 Fed. App'x 971 (11th Cir. 2006)(50% percent variance from the top end of Guidelines affirmed in Hobbs Act extortion and obstruction case); *United States v. Gray*, 453 F.3d 1323 (11th Cir. 2006)(affirming 72 month sentence even though low end of Guidelines was 151 months, more than double sentence imposed); *United States v. Halsema*, 180 Fed. App'x 103 (11th Cir. 2006) (unpublished)(affirming 24 month sentence even though Guidelines were 57 to 71 months); *United States v. Williams*, 435 F. 3d 1350 (11th Cir. 2006)(90 months imprisonment was sufficient, but not greater than necessary is reasonable but added "the guidelines are not only *not mandatory* on sentencing courts, they are also not to be *presumed reasonable*." To that end, we offer the following:

**Nature and Circumstances of Offense:** We adopt the the Factual Proffer agreed to by the parties in this case as a basis for the plea. We will explain through the remainder of this memorandum how Prat became involved in this offense conduct.

**Personal and Family History: Lazaro Prat** is a 48 year old naturalized United States citizen who has absolutely no prior criminal convictions. He was born in Havana, Cuba. He was raised in an emotionally abusive household. His father and grandfather were alcoholics. His father was a criminal and jailed in Cuba. His father committed various crimes to buy luxury items for his family and friends. Prat received no real paternal support and guidance and that laid the foundation for his subsequent adult behavior concluding in this offense conduct. His father did not try to hide his unfaithfulness to his mother from Prat. On numerous occasions while he was still a child, his father would take him to adult parties. At 14 years of age, his father took him to a prostitute so that he could "become a man."

His father abandoned the family. He was deported from a Cuban jail during the Mariel boat lift. At 15 years of age Prat attempted to escape Cuba and hid in a fishing boat in the hopes of reuniting with his father in the United States. The boat was discovered and he was jailed with adult criminals for 8 months.

Sometime later, Prat's father contacted his mother and arranged for visas for them to escape to Venezuela. In 1984 Prat's mother and sisters left Cuba but he was not allowed to leave. Alone,in Cuba he received the news that his father had been killed in Key West, Florida. His father had been shot. Prat was subsequently  allowed

to leave Cuba where he joined the other family members in Venezuela. The family initially resided with other Cuban refugees in abject poverty. Subsequently they moved to a room in an apartment and then to their own apartment. It was at that time that Prat became obsessed with making money to support his family and allow them to travel to the United States. In 1988 the family immigrated to the United States. Prat began working in construction. Prat married his first wife Olga in 1992 and they had two daughters, Melissa, ages 18 and Natalie, 16.. Thereafter he became a successful business man working as a developer and in construction industry.

In 2008, Prat married codefendant, Lissette Lopez Prat. Prat is committed to his family. He has been greatly involved in raising his children. This is evidenced by the passionate letters written by his two daughters. Melissa writes of her father's love and devotion:

> *I am proud to say that my father, Lazaro Prat, is a great and loving father to my sister, Natalie M. Prat and I. He has always been by our side and shows us support in anything that we do. He has showed us nothing but love in our upbringings. My dad has always been an extremely hardworking individual.  He works hard to accomplish his goals.*

More importantly she writes of his growth and change that has occurred since his Imprisonment;

> *It's been almost a year that my dad and his wife, Lisette Prat, have been imprisoned. It has been a tough journey to endure but my dad has become a more peaceful person in this journey. Since he has been at FDC, he has gotten to know the word of God and is now spreading it to the people of the floor that he is on. Before December 2012, my dad didn't know God but know he is deeply integrated into the word and I believe that his transformation is a great testimony to the people of the world.*

These words of change are echoed by daughter Natalie, who states:

*Our dad is a different person that he was nine months ago. He is now the pastor in the church in FDC on the 7th floor and has been told to have the biggest church. His heart grew and so did his patience! As his daughter, I am remarkably proud of him and his accomplishments throughout his life. We know that upon his liberty he will continue to be the angelic person we see once a week and to be honest, I cannot wait to see the mighty things he will do and how he will continue to serve God.*

Prat is extremely close with his sister's who have been instrumental in providing him support throughout this case.  He is equally close to his mother.

Prat's childhood was filled with abuse, trauma and poverty. As an adult he was committed to insure that his own family did not suffer the same. Unfortunately, at some point his desire to provide for his family overcame his own moral compass and he violated the law.

**Physical/Mental Health Concerns:** In addition to Prat's compelling childhood upbringing, Prat was recently been evaluated by Miami psychologist, Josefina Perez-Castro. The complete report will be provided to the Court, the United States and probation. Ms. Perez-Castro interviewed Prat at length as well as the family members. Based on this evaluation, she made findings which we believe are mitigation and more importantly give this Court a better picture as to how he became involved in the offense conduct.

> She finds that… [Prat]*" idealized his father to the point of over identifying with him…. As a child he took in his father's characteristics and developed an attachment to him."* At one point he had his father's name tattooed on his arm. *His father involved Prat in activities that were not only age inappropriate but also harmful to his character and moral makeup, including involving him in a secret religious order.*

10

In short she concludes that Prat never understood that the father with whom he identified was a criminal and more importantly never gave him the type of moral upbringing that every child deserves.

She further finds that " *Mr. Prat was exposed to traumatic events and to life experiences that were not age appropriate.*" Further that *these developmental experiences determine the organizational and functional status of the mature brain.*" Again, Prat's behavior was shaped early on through his relationship with his father and childhood events beyond his control. While this does not excuse the offense behavior, it gives an insight into how our childhoods affects our adult conduct. Prat's childhood history and dysfunction **should not be minimized as to its relationship to the offense conduct.** As stated in the report, there is a direct relationship between Prat's upbringing and the offense conduct.

**Latest Sentencing Statistics:** The United States Sentencing Commission has recently released sentencing statistics on 86,201 federal cases sentenced by the district courts FYE 2011, October 1, 2010 to September 30, 2011. According to the Commission's "Sourcebook," of the 2,093 cases sentenced in the Southern District of Florida last year, 35.7 % received sentences below the advisory guideline range, 9.4 % because of substantial assistance motions, and 19.9 %, more than double government sponsored motions, because of the sentencing factors of 18 USC § 3553. Why district courts varied downward from the *advisory* guideline range is available nationally and reported in Table 25B of the "Sourcebook." The nature and circumstances of the offense and/or history and characteristics of the defendant were cited as reasons for a downward variance in 9,410 cases, 1,470 cases specific to family ties and responsibilities, 589 cases for low likelihood of recidivism/not a risk to community, 467 cases for mental and emotional conditions,

and 365 cases for remorse. District courts continue to exercise discretion, post-*Booker*, and impose sentences below the *advisory* guideline range.

### IV. ADOPTION OF OBJECTIONS OF CO DEFENDANT LISSETTE LOPEZ PRATT

We hereby adopt the objections of the co defendant Lissette Lopez Pratt. Specifically as they relate to the increase for sophisticated money laundering. We further adopt their argument as it relates to the inaccurate statement made in paragraph 28, page 9 finding that there was an intended loss of $26,820,220. This is simply not supported by the evidence.

**Conclusion:** Counsel and Lazaro Prat are well aware that in fashioning a "reasonable" but not greater than necessary sentence, this Court must consider the nature and circumstances of the offense, 18 USC § 3553(a)(1). Prat has accepted responsibility for his involvement in this offense; he remains profoundly remorseful, and knows full well he made a terrible decision when he involved himself in this offense. However, he asks this Court to also consider the correct choices he has made as well as the changes he has made in his life since his arrest. Prat and Counsel thank this Court for considering our Objections to the PSR and this Memorandum in Aid of Sentencing. Counsel will have a specific sentencing recommendation and additional remarks at the time of sentencing.

Respectfully Submitted,

**DAVID K. TUCKER, P.A.**

*Attorney for the Defendant*

255 Alhambra Circle
Suite 630
Coral Gables, Florida 33134
(305) 461-3627 - Office
(305) 461-3628 - Facsimile

**By:*/S David K. Tucker***
**DAVID K. TUCKER**
Florida Bar Number: 406023

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing motion was electronically filed with the Clerk of Court via CM/ECF and served on all parties electronically this 11th day of December, 2012.

**By:*/S David K. Tucker***
**DAVID K. TUCKER**

---

[i] Due to family health issues, counsel was only working part time for the months of October and November, 2012.